No. 75,713

In the Matter of the Marriage of YVONNE M. HAMPSHIRE,
*Appellee*, and RICKY L. HAMPSHIRE, *Appellant.*

934 P.2d 58

Opinion filed March 7, 1997.

*Timothy J. Henry*, assistant federal public defender, argued the cause, and *David J. Phillips*, federal public defender, was with him on the briefs for appellant.

*Douglas L. Guill*, of Kansas Department of Social and Rehabilitation Services, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This case originated as a default judgment in a civil domestic case in which a grant of divorce, an order of child custody, and an order to pay child support were entered against the appellant husband, a member of the United States Army, in the district court of Riley County in 1986. Nearly 10 years after the default

judgment was entered, appellant, who was no longer in the Army, filed a motion pursuant to K.S.A. 60-260(b) seeking relief from that portion of the default judgment awarding child support. Appellant contended that the default judgment for child support was void since it (1) had been entered in violation of 50 U.S.C. App. § 520(1) of the Soldiers' and Sailors' Civil Relief Act of 1940 (SSCRA), 50 U.S.C. App. § 501 *et seq.* (1994), and (2) violated his due process rights. The district court found that although the SSCRA applied, the judgment was voidable, not void, and denied the motion. Appellant appeals, claiming (1) because the district court failed to appoint counsel as required by the SSCRA, the default judgment ordering child support was void, and (2) the failure to appoint counsel violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution.

Ricky L. Hampshire was absent without leave (AWOL) from the Army in October 1985. On October 4, 1985, his wife filed a petition for divorce and application for temporary custody, support, and attorney fees in the district court of Riley County. The Application for Temporary Custody, Support and Attorney Fees stated in part: "The respondent is an E-6 in the United States Army. Although he is currently absent without leave, he has a source of substantial income and should be required to pay temporary support and attorney fees pending the final hearing in this matter."

On November 5, 1985, Hampshire was arrested and incarcerated in Riley County jail on a DUI charge. Hampshire remained incarcerated throughout the pendency of the divorce proceedings awaiting court martial by the Army for a felony drug offense. On November 13, 1985, he was served at the Riley County jail with the petition for divorce; the application for temporary custody, child support, and attorney fees; an order for temporary support; and a notice of hearing. The return of service and summons dated November 13, 1985, and notices of hearing show service upon Hampshire at the Riley County jail. On November 18, 1985, Hampshire's wife served a notice of hearing on the application for temporary attorney fees by mail on Hampshire at the Riley County jail. On November 25, 1985, Hampshire's wife served Hampshire

by mail with a notice that the hearing was continued to December 2, 1985. Hampshire failed to answer the petition, acknowledge receipt of the notices, or contact the district court.

Hampshire's wages were garnished, and the United States filed an answer to the garnishment on January 24, 1986. On January 27, 1986, the district court of Riley County found Hampshire had been properly served and entered a default judgment granting a divorce, awarding sole custody of the children to the mother, and ordering Hampshire to pay child support in the amount of $350 per month commencing February 1, 1986. Hampshire was not notified of the January 27, 1986, hearing. In early February 1986, Hampshire was court martialed, convicted of distribution of a narcotic substance, and incarcerated in the Fort Leavenworth military prison.

On May 20, 1986, Hampshire was aware of the default judgment ordering child support when he was personally served at the Fort Leavenworth disciplinary barracks with a notice of delinquency informing him that he had an unpaid child support obligation in the amount of $1,400. On June 18, 1986, Hampshire was served at Fort Leavenworth with an income withholding order. On July 13, 1987, the district court of Riley County was informed that Hampshire was in prison on a "no pay status" and that no further funds would be available. Hampshire was dishonorably discharged and released from the disciplinary barracks in 1988. Even though Hampshire remarried in 1989, he failed to pay child support or respond to the default judgment. We now proceed through the federal and state courts to determine if the award of child support was proper under the circumstances.

On December 21, 1994, Hampshire was criminally charged in federal district court in Wichita with willful failure to pay a past due child support obligation in violation of 18 U.S.C. § 228 (1994), the Child Support Recovery Act (CSRA). See *U.S. v. Hampshire*, 892 F. Supp. 1327 (D. Kan. 1995). Hampshire's response to the action was a motion to dismiss it on the grounds that (1) the CSRA was invalid; (2) the underlying Riley County civil default judgment awarding child support had been entered in violation of his due process rights; (3) as an AWOL soldier in custody in Riley County jail, he had no meaningful opportunity to be heard or to appeal

the divorce action; and (4) the child support order was void because it had been entered in violation of the SSCRA, which Hampshire argued required that the Riley County District Court appoint an attorney to represent him in the divorce action.

Hampshire asserted that the CSRA was invalid because Congress did not explicitly set forth the constitutionally enumerated power supporting the statute. He further argued that the CSRA violated the Tenth Amendment to the United States Constitution by interfering with the state's traditional police powers and that the CSRA could not be predicated upon Congress' commerce power. The federal district judge determined that the CSRA applies only to persons who willfully violate support obligations as to children residing "in another State" and had no application to domestic relations matters occurring entirely within a given state. The judge further found that the failure to pay child support had an effect on interstate commerce sufficient to comply with constitutional requirements. As to Hampshire's argument that the CSRA violated the Tenth Amendment and infringed the state's police powers, the federal court observed that the CSRA created criminal sanctions for individuals who fail to comply with child support obligations. It determined that the CSRA made no attempt to regulate state conduct but regulated purely private conduct, and did not represent a violation of the Tenth Amendment. 892 F. Supp. at 1330.

Hampshire also argued that as an AWOL soldier in custody in the Riley County jail, he had no meaningful opportunity either to be heard or to appeal the divorce action. The federal district court refused to accept Hampshire's general due process argument because Hampshire failed to articulate what specific provisions of Kansas law prevented him from defending himself in, or appealing, the state divorce decree and the associated award of child support while incarcerated. 892 F. Supp. at 1331-32.

Next, Hampshire asserted that the award of child support in the state action violated provisions of the SSCRA. 50 U.S.C. App. § 510 of the SSCRA sets forth its purpose as follows:

"In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the

United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation . . . . "

50 U.S.C. App. § 520(1) and (4) of the SSCRA establish the procedures which must be followed for a party to obtain a default judgment against a member of the military. 50 U.S.C. App. § 520(1) provides in part:

"In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. If unable to file such affidavit plaintiff shall in lieu thereof file an affidavit setting forth either that the defendant is in the military service or that plaintiff is not able to determine whether or not defendant is in such service. If an affidavit is not filed showing that the defendant is not in the military service, no judgment shall be entered without first securing an order of the court directing such entry, and no such order shall be made if the defendant is in such service until after the court shall have appointed an attorney to represent defendant to protect his interest, and the court shall on application make such appointment."

50 U.S.C. App. § 520(4) provides:

"If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service or within thirty days thereafter, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof."

The SSCRA prohibits entry of judgment against a person known to be in military service until the court appoints an attorney to represent defendant and protect his interests. The federal district court agreed with Hampshire that the Kansas default decree violated 50 U.S.C. App. § 520 when the state court failed to appoint counsel for him. It noted however, that the issue was whether the violation of the SSCRA was of sufficient gravity to dismiss the criminal proceeding. 892 F. Supp. at 1332.

The federal district court noted that a civil judgment rendered in violation of the SSCRA is merely voidable, rather than void, and does not violate due process. The court observed that under 50 U.S.C. App. § 520(4), a person affected by the SSCRA has 90 days after the end of his service to have the judgment set aside. Thus, even if the procedure to obtain the judgment failed to comply with the requirement of the SSCRA, the judgment would be valid if the affected serviceman failed to have the judgment vacated pursuant to subsection (4). 892 F. Supp. at 1332. The federal district court found there was no indication that Hampshire ever attempted to have the award of support set aside within the appropriate time. In addition, Hampshire had failed to prove that he was unable to challenge the decree directly, unable to appeal it, or unable to have it subsequently set aside pursuant to various statutory provisions. 892 F. Supp. at 1332.

The federal district court found that Hampshire had failed to show that the child support judgment was rendered without due process; therefore, the underlying support decree did not violate any constitutional protection and the criminal proceeding could not be dismissed. 892 F. Supp. at 1333. After the federal district court rejected Hampshire's arguments, Hampshire entered a conditional plea of guilty and appealed to the Tenth Circuit Court of Appeals.

In the order denying Hampshire's motion to dismiss, the federal district judge observed that K.S.A. 60-255(b) allows Kansas courts to set aside prior default judgments for good cause. 892 F. Supp. at 1332. Based upon this statement, Hampshire filed a motion in Riley County District Court to set aside the child support order as void pursuant to K.S.A. 60-260(b)(4) and (6). In the state district court, Hampshire argued again that (1) the default judgment ordering him to pay child support was void ab initio since his former wife had failed to file an affidavit alerting the district court that he was a member of the armed services; (2) the SSCRA requires an appointment of counsel for a member of the armed services in any action or proceeding commenced in any court and he had not been appointed counsel; and (3) the entry of default judgment violated his due process rights because he was not afforded a meaningful opportunity to be heard. On November 21, 1995, the state district

court followed the rationale of the federal district court and denied each of Hampshire's claims. Hampshire appealed to the Court of Appeals, and the case was transferred to this court pursuant to K.S.A. 20-3018(c).

While Hampshire's state court appeal was pending, the Tenth Circuit affirmed Hampshire's federal criminal conviction under the CSRA in *U.S. v. Hampshire*, 95 F.3d 999 (10th Cir. 1996). In upholding the federal district court, the Tenth Circuit noted that the Commerce Clause empowers Congress to regulate three aspects of interstate commerce: the use of the channels of interstate commerce; the instrumentalities of interstate commerce, or persons or things in interstate commerce; and the activities that have a substantial relation to or substantially affect interstate commerce. Quoting *U.S. v. Mussari*, 95 F.3d 787, 790 (9th Cir. 1996), the court asserted that the obligation of a parent in one state to provide support for a child in a different state is an obligation to be met by a payment that will normally move in interstate commerce—by mail, by wire, or by the electronic transfer of funds. That obligation was, therefore, a thing in interstate commerce and fell within Congress' regulatory power. 95 F.3d at 1002.

As to Hampshire's Tenth Amendment argument, the Tenth Circuit observed that the Tenth Amendment provides that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." 95 F.3d at 1004. It noted that to successfully demonstrate a violation of the Tenth Amendment, a claimant must show that the challenged statute regulates "states as states," addresses matters that are attributes of state sovereignty, and directly impairs the State operations in areas of traditional state functions. The court observed further that when Congress acts under one of its enumerated powers—here, its power under the Commerce Clause—there can be no violation of the Tenth Amendment. 95 F.3d at 1004.

The Tenth Circuit then addressed Hampshire's claim that the state court's failure to appoint counsel for his defense in the divorce action violated both the SSCRA as well as his due process rights under the Fourteenth Amendment by denying him the opportunity

to challenge the child support order. It observed that both claims presented questions of law that it reviewed de novo.

The Tenth Circuit noted that the SSCRA temporarily suspends enforcement of civil liabilities against people on active duty in the military "until after the court shall have appointed an attorney to represent the defendant and protect his interest." 95 F.3d at 1005. However, the court did not agree with the federal district court's finding that Hampshire was entitled to an attorney under the SSCRA. It found that the language of the SSCRA was clear, citing 50 U.S.C. App. § 511(1). It noted that "military service" is defined as "[f]ederal service on active duty" and "active duty" is defined as including "the period during which a person in military service is absent from duty on account of sickness, wounds, leave, or other lawful cause." 95 F.3d at 1005. It concluded that an AWOL soldier is not absent due to "sickness, wounds, leave, or other lawful cause" and could not avail himself of benefits under the SSCRA. It pointed out that Hampshire conceded his 1986 child support liability arose during the time when he was AWOL from the military. The Tenth Circuit determined that because Hampshire was AWOL during the relevant time period, he was not on "active duty" as required by the plain language of the SSCRA. 93 F.3d at 1005. Because the state district court had not violated Hampshire's rights under the SSCRA, the Tenth Circuit did not reach Hampshire's due process claim predicated on such a violation.

The Tenth Circuit then turned to Hampshire's argument that his Fourteenth Amendment due process rights were violated because he had no meaningful opportunity as an AWOL soldier in a civilian jail to be heard in state court to challenge the state divorce and child support actions that form the basis of his CSRA conviction. The court observed that the Due Process Clause, incorporated by the Fourteenth Amendment to apply to the states, only "applies when government action deprives a person of liberty or property." 93 F.3d at 1005. Citing *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554 (7th Cir. 1986), it pointed out that Hampshire failed to articulate how the government had prevented him from meaningfully defending himself while in prison or to identify a state law that prevented him from doing so. It determined even though

the federal district court had incorrectly concluded Hampshire had been denied his right to an attorney, it had properly rejected his claim. 93 F.3d at 1005.

We now turn to Hampshire's argument that he is entitled to relief from judgment under state law. K.S.A. 60-260(b) provides:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; . . . or (6) any other reason justifying relief from the operation of the judgment."

A ruling on a motion for relief from a final judgment filed pursuant to K.S.A. 60-260(b) rests within the sound discretion of the trial court and will not be reversed absent a showing of abuse of discretion. *In re Marriage of Zodrow*, 240 Kan. 65, Syl. ¶ 2, 727 P.2d 435 (1986). When a default judgment is attacked as being void, however, there is no question of discretion on the part of a court when a judgment is attacked under K.S.A. 60-260(b)(4). Either a judgment is valid or it is void, and the court must act accordingly once the issue is resolved.

A void judgment is one rendered by a court which lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process. *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 21, 558 P.2d 101 (1976); *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan. App. 2d 393, Syl. ¶ 2, 808 P.2d 881 (1991). Where a judgment is attacked under 60-260(b)(4) as being void, there is no requirement that the moving party show that he has a meritorious defense. A judgment is void if the court acted in a manner inconsistent with due process. A void judgment is a nullity and may be vacated at any time. *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 495-96, 781 P.2d 1077 (1989), *cert. denied* 495 U.S. 932 (1990).

Here, for the fourth time, Hampshire argues that the child support order entered by the district court should be set aside pursuant to K.S.A. 60-260(b)(4) as void since it was entered in violation of his right to an attorney under the SSCRA.

We agree with the Tenth Circuit that the protections of the SSCRA apply only to persons in military service and not to persons

who are AWOL or incarcerated under military law. Section 511(1) of the SSCRA provides that persons in the military service shall include

"the following persons and no others: All members of the Army of the United States, the United States Navy, the Marine Corps, the Air Force, the Coast Guard, and all officers of the Public Health Service detailed by proper authority for duty either with the Army or the Navy. The term 'military service,' as used in this Act [said sections], shall signify Federal service *on active duty* with any branch of service heretofore referred to or mentioned as well as training or education under the supervision of the United States preliminary to induction into the military service. *The terms "active service" or "active duty" shall include the period during which a person in military service is absent from duty on account of sickness, wounds, leave, or other lawful cause."* (Emphasis supplied.)

According to the plain meaning of the statute, the SSCRA would not apply to Hampshire who, at the time the divorce action was commenced, was (1) AWOL and incarcerated in the Riley County jail; (2) subsequently transferred to the Fort Leavenworth disciplinary barracks; (3) court martialed for a felony drug offense; and (4) ultimately convicted and sentenced to serve a term of imprisonment at Fort Leavenworth until his dishonorable discharge in 1988. In other words, Hampshire was not on "active duty" as required by the SSCRA.

We find that Hampshire is not entitled to the protections afforded by the SSCRA as he was not in military service or on active duty during the relevant time period. Although neither the federal district judge nor the Riley County district judge decided the case on this ground, the subsequent Tenth Circuit opinion affirming the federal district court did. The Tenth Circuit cited *Harriott v. Harriott*, 211 N.J. Super. 445, 511 A.2d 1264 (1986), and concluded:

"Because he was AWOL at the time of filing and throughout the divorce proceedings, Mr. Hampshire was not on 'active duty' and is definitionally precluded by the plain language of the SSCRA from availing himself of its benefits. See 50 U.S.C. App. § 511(1). Because the state court did not violate Mr. Hampshire's rights under the SSCRA, we need not reach Mr. Hampshire's due process claim predicated on such a violation." 95 F.3d at 1005.

This result is equitable and consistent with the stated purpose of the SSCRA to suspend the enforcement of civil liabilities for

persons in military service in order to enable them to devote their entire energy to the defense needs of the nation. See 50 U.S.C. App. § 510. The purpose of § 520 of the SSCRA in particular is to protect persons in the military from having civil judgments entered against them without their knowledge and without an opportunity to defend their interests. See, *e.g.*, *Roqueplot v. Roqueplot*, 88 Ill. App. 3d 59, 61, 410 N.E.2d 441 (1980).

Here, Hampshire was served with the divorce petition and chose neither to answer nor to make any response until a criminal action was brought against him almost 8 years after judgment was entered in the divorce action. Hampshire decided to ignore the pleadings served, notices of hearing, and the judgment entered against him with respect to the award of child support. However, he deemed the January 27, 1986, judgment sufficiently valid to allow his re-marriage in 1989. Under these circumstances, Hampshire's attempt to use his unlawful absence from military service and period of incarceration as a shield to avoid his child support responsibilities cannot be condoned by the court.

Because Hampshire's claim of a due process violation depends upon his entitlement to the protections afforded to active duty servicemen under the SSCRA and he is not entitled to the benefits of the SSCRA, our inquiry ends.

Affirmed as modified.